## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**John David Quinly,**

**Plaintiff,**

**v.**                                                    **Case No. 06-2327-JWL**

**City of Prairie Village, Kansas,**

**Defendant.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff, a resident of the City of Prairie Village, filed suit against defendant ("the City") asserting that the City's sign ordinance violates the First Amendment to the United States Constitution. This matter is presently before the court on plaintiff's motion for a preliminary injunction (doc. 3). As will be explained, the motion is granted.

### I.    Factual Background and Key Provisions of the City's Sign Ordinance

Plaintiff John David Quinly is a resident of Prairie Village, Kansas, a municipal corporation and a political subdivision of the State of Kansas. In September 2005, plaintiff was displaying two signs in the yard at his residence. The signs contained a message opposing the war in Iraq. Specifically, the complete message displayed across the two signs stated: "Dubya–End the occupation. Stop murdering the poor in Iraq and help the poor in New Orleans!" On September 20, 2005, a City codes inspector determined that plaintiff's signs violated the City's ordinance pertaining to political signs in that the total square footage of the signs exceeded the total square footage permitted by the ordinance. On October 4, 2005,

plaintiff appeared in the City's municipal court and pled no contest to the sign violation.  He was convicted and fined $300 for the sign ordinance violation.  On October 18, 2005, plaintiff appealed the sign conviction to the District Court of Johnson County, Kansas and in January 2006, at a hearing before the District Court of Johnson County, the City dismissed with prejudice the sign violation.  Since that time, plaintiff has continued to display on his residential property political signs expressing his opposition to the war in Iraq and his dissatisfaction with President George W. Bush.

In early June 2006, the City amended its sign ordinance.  In so doing, the City repealed the provision entitled "Political Signs," section 19.48.015 L, and replaced that provision with a new section 19.48.015 L, entitled "Informational Signs."   The ordinance defines an "Information Sign" as a "noncommercial sign that states, promotes or addresses an expression of free speech, a personal belief, or a political party, candidate or issue and is typically constructed from non-durable materials, including paper, cardboard, plastic and/or wall board." See Ord. 19.48.011 O.  New section 19.48.015 L, which applies to informational signs posted in both residential and commercial zoning districts,[1] places restrictions on the size and number

---

[1]While none of the parties raised the issue, the court inquired at oral argument whether plaintiff, who does not own property in a commercial zoning district, had standing to challenge section 19.48.015 L to the extent that section applied to commercial zoning districts.  Plaintiff alleges but does not aver that he could conceivably wish to find someone who owned commercial property and seek permission to place an informational sign on that person's property.  The court concludes that plaintiff does not have standing to challenge section 19.48.015 L to the extent that section applies to commercial zoning districts, as plaintiff has not shown that he has suffered any injury as a result of the ordinance as it applies to commercial zoning districts.  *See Warth v. Seldin*, 422 U.S. 490, 504 (1975) (holding plaintiffs challenging zoning ordinance lacked standing because, among other

of informational signs that may be displayed at one time, places limits on the length of time a particular sign may be displayed and precludes a sign from containing obscene, profane or indecent material. The new section also requires that informational signs be designed to withstand all weather conditions.

Plaintiff alleges that he desires to display informational signs on his residential property that violate the terms of new section 19.48.015 L and that he has refrained from displaying such signs in light of the new ordinance. He filed suit challenging four specific provisions of new section 19.48.015 L on the grounds that these provisions are content-based restrictions that do not survive strict scrutiny and, violate the First Amendment to the United States Constitution. The four provisions state, in pertinent part, as follows:

> 19.48.015 L.2(a):     The total square footage for Informational signs in any district, in the aggregate, shall not exceed thirty-two (32) square feet, with no individual sign exceeding sixteen (16) square feet.[2]

---

reasons, "none is himself subject to the ordinance's strictures"); *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (litigant challenging ordinance must establish that he has suffered an "injury in fact" that is actual or imminent, not conjectural or hypothetical; that there is a causal connection between the injury suffered and the conduct in question; and that it is likely, not speculative, that a favorable decision will redress the injury); *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1281-82 (10th Cir. 2002) (plaintiffs could challenge only those provisions of ordinance under which they sustained actual injury or "real and immediate" threat of injury); *accord Granite State Outdoor Advertising, Inc. v. Cobb County, Georgia*, 2006 WL 2373528, at *5 (11th Cir. Aug. 17, 2006) (plaintiff lacked standing to challenge constitutionality of certain regulations in sign ordinance where there was no evidence that plaintiff intended to construct signs governed by those regulations).

[2]This provision further explains that the "total square footage of a sign is measured to include all of the visible display area of only one side of the sign and only the area of one

19.48.015 L.2(b):   Informational signs shall not display obscene, profane or indecent material.

19.48.015 L.2(f):   Signs shall be designed to be stable under all weather conditions, including high winds.

19.48.015 L.2(i):   An Informational sign may be posted for a period of up to ninety (90) days, at which time the sign shall be removed or replaced except that those signs tied to an election shall be removed immediately after the date of the election.

Under the ordinance, signs that do not fit within the definition of "Informational Signs" but are nonetheless, like informational signs, temporary in nature, are subject to different (and, in some instances, less favorable) regulations.[3]  For example, a "for sale" sign announcing the sale of a home in a residential district cannot exceed 8 square feet and a homeowner is permitted to display only one such sign on his or her property; the sign may be displayed for the period that the home is "for sale" and must be removed within 7 days of the execution of the sales contract. A "garage sale" sign cannot exceed 5 square feet and a homeowner is permitted to display only one such sign on his or her property; the sign may be displayed for the period of the sale only. In addition, "temporary" signs at churches, synagogues, schools and libraries in a residential district cannot exceed 32 square feet and the displaying entity is permitted to display only 3 such signs during a calendar year and each sign may be displayed for a period of 21 days.  On its face, the ordinance does not permit a contractor working on a residential home (*e.g*., Acme Roofing

_____

side of a double sided sign is included in the aggregate calculation."  Plaintiff does not challenge this aspect of the provision.

[3]The court, then, rejects the City's representation at oral argument that new section 19.48.015 L applies to "all temporary signs."

Company building a new roof on the home) to place a sign on the property identifying the business that is providing the goods or services to the homeowner.[4]  The City's sign ordinance prohibits "obscene, profane or indecent material" in any sign, regardless of the type of sign.

## II.    Preliminary Injunction Standard

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citing *SCFC ILC, Inc. v. Visa USA, Inc*., 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted); *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc*., 883 F.2d 886, 888-89 (10th Cir. 1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established.").  In order to be entitled to entry of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the moving party must establish that:

> (1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

*Id*. (citations, quotations and alterations omitted).

The City contends that the court should scrutinize plaintiff's motion using a heightened standard because plaintiff seeks a "disfavored" preliminary injunction; that is, plaintiff is seeking

---

[4]At oral argument on plaintiff's motion, counsel for the City conceded that contractors routinely place such signs on residential property and that the City does not enforce the ordinance by requiring removal of these signs.

to alter the status quo. *See id.* at 1259-60 (identifying as a disfavored preliminary injunction an injunction that seeks to alter the status quo; limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held"). A disfavored injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1260 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)).   In such circumstances, a plaintiff is required to make a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms" and may not rely on the Circuit's "modified likelihood-of-success-on-the-merits standard." *Id.* at 1261 (quoting *O Centro*, 389 F.3d at 975-96).   Ultimately, the court determines that it need not decide whether the injunction sought by plaintiff is disfavored, because, regardless of which standard applies, plaintiff has satisfied the heightened burden described in *O Centro*.

### III.    Likelihood of Success on the Merits

When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. *Joelner v. City of Washington Park, Illinois*, 378 F.3d 613, 620  (7th Cir. 2004) (citing cases).  As explained by the Seventh Circuit:

> The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, and money damages are therefore inadequate.  Concomitantly, there can be no irreparable harm to a municipality

> when it is prevented from enforcing an unconstitutional statute because it is
> always in the public interest to protect First Amendment liberties.

*Id.* (citations and quotations omitted). The court is persuaded by the Seventh Circuit and, if

plaintiff satisfies the "likelihood of success" prong of the four-factor test, the court will grant

plaintiff a preliminary injunction. The court, then, focuses solely on whether plaintiff has shown

a substantial likelihood of success of the merits of his claims. *See Homans v. City of*

*Albuquerque*, 264 F.3d 1240, 1244-45 (10th Cir. 2001) (where plaintiff demonstrated substantial

likelihood of success on the merits of his First Amendment claim, public interest was "better

served by following Supreme Court precedent and protecting the core First Amendment right

of political expression"); *ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (upon

showing a likelihood of success on the merits in the First Amendment context, other factors are

satisfied: irreparable injury is deprivation of First Amendment rights; injury outweighs

defendant's inability to enforce unconstitutional statute; public interest in free expression is

protected).

In evaluating the constitutionality of an ordinance restraining or regulating speech, the

court first inquires whether the ordinance is "content-based" or "content-neutral." *See Solantic,*

*LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005) (citations omitted). If the

ordinance is "a content-neutral time, place, and manner restriction, it is subject to intermediate

scrutiny–that is, it must not restrict speech substantially more than necessary to further a

legitimate government interest, and it must leave open adequate alternative channels of

communication." *Id.* However, if the ordinance "is content based, it is subject to strict scrutiny,

7

meaning that it is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest." *Id.; accord Essence, Inc. v. City of Federal Heights,* 285 F.3d 1272, 1283 (10th Cir. 2002).

In the context of evaluating the constitutionality of a sign ordinance, the ordinance will be deemed content based if a violation of the ordinance may be determined only by examining the content of the sign. *See, e.g., Solantic*, 410 F.3d at 1262 & n.11; *Whitton v. City of Gladstone*, 54 F.3d 1400, 1403-04 (8th Cir. 1995) (restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction); *accord City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) ( "Under the city's newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense understanding of the term, the ban in this case is 'content based.'"). On the other hand, the ordinance will be deemed content neutral if it applies equally to all signs. *Solantic*, 410 F.3d at 1259.[5]

---

[5]At oral argument, the City insisted that new section 19.48.015 L is content-neutral because it is "very, very broad" in that it governs signs displaying any expression of free speech, including the expression of any personal belief or the promotion of any political party, candidate or issue. However, the mere fact that a restriction on speech is "viewpoint neutral" does not necessarily render that restriction content-neutral. *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1405 (8th Cir. 1995) (citing *Consolidated Edison v. Public Serv. Comm'n*, 447 U.S. 530, 537 (1980) (addressing prohibition on utilities from including inserts in monthly electric bills discussing desirability of nuclear power, the Court stated that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic"); *Burson v. Freeman*, 504 U.S. 191, 196-97 (1992) (Tennessee statute which prohibited the solicitation of votes and display of campaign material within 100 feet of polling place on election day content-based even though it applied to all political speech)).

A.     *Size Limitations*

The court first addresses plaintiff's challenge to new section 19.48.015 L.2(a), which limits the total square footage for informational signs to thirty-two (32) square feet and limits the square footage for an individual informational sign to sixteen (16) square feet. In that regard, plaintiff challenges both the size limitation for an individual sign and the aggregate size limitation for all signs. With respect to the size of individual signs, it is undisputed that the ordinance sets forth varying requirements depending on the type of sign. As stated, an informational sign cannot exceed 16 square feet. In contrast, a temporary sign at a church, synagogue or school cannot exceed 32 square feet; a "for sale" sign on a residential property cannot exceed 8 square feet; and a sign advertising a garage sale on a residential property cannot exceed 5 square feet.[6] Without question, then, a City official would be required to consider the content of the sign to determine whether the sign complied with the applicable size limitation set forth in the ordinance. The individual size limitation for informational signs, then, is content-based. *See Advantage Media, LLC v. City of Hopkins*, 379 F. Supp. 2d 1030, 1039-40 (D. Minn. 2005) (ordinance was content-based where it regulated size of signs based upon type of sign; residential political signs were limited to 4 square feet and other temporary signs were given

_____

[6]In his motion and at oral argument, plaintiff, in an effort to show that the ordinance concerning informational signs is content-based, frequently sought to compare the treatment of informational signs in residential zoning districts to other temporary signs in commercial zoning districts. The court declines to consider whether this comparison is an appropriate one to make, as the court concludes that the provisions challenged by plaintiff are content-based in light of the City's treatment of other temporary signs in residential zoning districts. In other words, the court need not look to temporary signs in commercial zoning districts to determine that the ordinance concerning informational signs is content-based.

more latitude); *Clear Channel Outdoor, Inc. v. Town Board of the Town of Windham*, 352 F.

Supp. 2d 297, 308 (N.D.N.Y. 2005) (ordinance was content-based where some temporary signs

were limited to 8 square feet and other temporary signs were limited to 32 square feet);

*Sugarman v. Village of Chester*, 192 F. Supp. 2d 282, 302 (S.D.N.Y. 2002) (size limitation was

content-based where political signs were limited to 16 square feet and other temporary signs

were limited to 32 square feet; the "First Amendment proscribes municipal favoritism of one

form of speech over another, even if the ordinance merely allows one entity to post larger signs

than another on the basis of the sign's content").[7]

Turning to the aggregate size limitation of 32 square feet, the court similarly concludes

that this restriction is content-based.  As stated above, a church, synagogue or school in a

residential district may display an individual "non-informational" (*i.e*., a sign that does not fall

within the ordinance's definition of an informational sign) temporary sign as large as 32 square

feet.  While the ordinance limits the number of these signs to three signs in a calendar year and

limits the display of such signs to 21 days in duration,[8] the ordinance read literally, whatever the

---

[7]The City directs the court to *Baldwin v. Redwood City*, 540 F.2d 1360, 1368 (9th Cir. 1976), where the Circuit concluded that an individual sign limitation of 16 square feet did "not offend the First Amendment."  As the court explained during oral argument, however, the ordinance at issue in *Redwood City* is distinguishable in a significant respect from the City's ordinance here.  In *Redwood City*, the 16-square-feet size limitation applied to all temporary signs, regardless of the content of those signs.  *See id.* at 1363.  Here, the challenged size limitation does not apply to all temporary signs; it applies only to "informational" signs.

[8]The ordinance favors informational signs in this respect because informational signs are not subject to the 3-sign limit and 21-day duration.  As the Eighth Circuit has noted, however, "we are aware of no authority which allows restrictions imposed on commercial

intent of the city council, does not prevent the entity from displaying all 3 temporary signs for the same 21-day period.  Thus, if a church desired to display 3 temporary signs of 32 square feet each at the same time, the total square footage of non-informational temporary signs on display would be 96 square feet and would not be prohibited by the ordinance.  The ordinance, then, distinguishes between different kinds of noncommercial speech and is content-based.  *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 514-15 (1981) (restriction is content-based if it favors certain kinds of noncommercial speech over others); *compare Redwood City*, 540 F.2d at 1368-69 (upholding ordinance limiting aggregate signage to 80 square feet where that limitation applied to all temporary signs); *Kennedy v. Avondale Estates, Georgia*, 414 F. Supp. 2d 1184, 1204 (N.D. Ga. 2005) (upholding ordinance limiting aggregate signage to 12 square feet where that limitation applied to "all property located in a residential district").

Having concluded that both the individual size limitation and the aggregate size limitation of new section 19.48.015 L.2(a) are content-based restrictions, the court turns to consider whether the City has demonstrated that the ordinance is necessary to serve a compelling interest. According to the City, the size limitations contained in new section 19.48.015 L.2(a) are necessary to achieve the City's interest in traffic safety.  As the City explained at oral argument, the "proliferation of large informational signs, particularly in residential areas, poses a real and immediate danger" to its citizens.  Beyond the fact that courts have been reluctant to find

speech to offset other restrictions imposed on noncommercial speech, achieving a sort of balance, in order to render the challenged provision content-neutral."  *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1405 n.9 (8th Cir. 1995).

compelling a municipality's interest in traffic safety as a basis to uphold content-based sign regulations, *see Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267 (11th Cir. 2005) (city's interest in traffic safety not compelling); *Whitton v. City of Gladstone*, 54 F.3d 1400, 1408 (8th Cir. 1995) (city's interest in traffic safety has never been held to be compelling); *Rappa v. New Castle County*, 18 F.3d 1043, 1082 (3rd Cir. 1994) (allowance of some signs but not others indicates city's interest in traffic safety not compelling), at least two other problems exist with the City's argument here.

First, while the City's asserted interest in traffic safety is legitimate, the ordinance, as currently written, does not address that interest because the size limitations applicable to informational signs are not applicable to other signs which present identical concerns. The City expresses concern that any informational sign larger than 16 square feet presents a traffic hazard, but fails to explain how a 32-square-foot sign in the same residential district does not present the same hazard. Stated another way, the City does not explain how informational signs subject to the 16-square-foot size limitation create safety hazards beyond those created by 32-square-foot non-informational temporary signs. *See McFadden v. City of Bridgeport*, 422 F. Supp. 2d 659, 675 (N.D. W. Va. 2006). Similarly, the City is concerned that aggregate signage in a residential district exceeding 32 square feet presents a traffic hazard but fails to explain how aggregate signage of 96 square feet in the same residential district (or, aggregate signage of 48 square feet if a particularly industrious homeowner elected to have a total of 32 square feet of informational signs, plus a garage sale sign, a for sale sign and an open house sign) does not present a traffic hazard.

Second, the City offers no support for its contention that the "proliferation of large informational signs poses a real and immediate danger" to its citizens. The City admitted at oral argument that it had conducted no studies indicating whether its citizens (or, for that matter, citizens of any other city) had suffered from traffic accidents as a result of large informational signs. The court, then, declines the City's invitation to apply the "secondary effects" doctrine, *see Renton v. Playtime Theatres, Inc*., 475 U.S. 41 (1986), because the City has not shown any secondary effects attributable to informational signs which distinguish them from other temporary signs. *See Whitton*, 54 F.3d at 1407 n.11 (declining to apply secondary effects doctrine where city failed to show any secondary effects attributable to political signs subject to durational limitations and other signs not subject to the limitations).

For the foregoing reasons, the court concludes that new section 19.48.015 L.2(a) is a content-based restriction that fails to satisfy strict scrutiny. Plaintiff has made a strong showing that he is likely to succeed on this First Amendment claim.

B.      *Prohibition Against Obscene, Profane and Indecent Material*

New section 19.48.015 L.2(b) prohibits informational signs from displaying obscene, profane or indecent material. Plaintiff challenges this provision on two grounds. First, he asserts that the City, in this context, cannot regulate the display of profane or indecent material in any respect.[9] Second, he asserts that, assuming the City is able to regulate the display of

---

[9]Plaintiff does not challenge the City's ability to regulate the display of obscene material. *See, e.g., Nichols Media Group, LLC v. Town of Babylon*, 365 F. Supp. 2d 295, 312

profane and indecent material, new section 19.48.015 L.2(b) is unconstitutionally vague in its entirety as the City has failed to define the terms "obscene" "profane" or "indecent" anywhere in the ordinance.  Because the court easily concludes that new section 19.48.015 L.2(b) violates the First Amendment as it is unconstitutionally vague, the court declines to address plaintiff's argument concerning the scope of the City's ability to regulate profane and indecent material in the context of its sign ordinance.

While new section 19.48.015 L.2(b) prohibits the display of "obscene, profane or indecent material," the ordinance does not define the terms "obscene," "profane" and "indecent."  In the absence of such definitions, the ordinance contains no guidelines for enforcement of the provision and subjects the exercise of free speech rights to an unascertainable standard.  *See Jordan v. Pugh*, 425 F.3d 820, 828-29 (10th Cir. 2005) (ordinance is unconstitutionally vague if it fails to set guidelines for enforcement and subjects rights to unascertainable standards) (citing cases).  Moreover, the court has little doubt that a reasonable City resident of ordinary intelligence and common sense would necessarily have to guess as to what messages the provision prohibited.  *See West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1368 (10th Cir. 2000) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)).  Even the City has difficulty ascertaining what messages would be prohibited under the provision–when asked at oral argument whether a sign that stated "To Hell with Howard Dean" would be considered profane, the City responded that it did "not have an answer to that question."

---

(E.D.N.Y. 2005) (city has a right to prohibit obscene signs without running afoul of the First Amendment) (citing *Miller v. California*, 413 U.S. 15, 18-19 (1973)).

Indeed, nearly every court that has addressed the issue of whether a sign ordinance prohibiting the display of obscene, profane , indecent or immoral material is unconstitutionally vague has reached the same conclusion.  *See Solomon v. City of Gainesville*, 763 F.2d 1212, 1215 (11th Cir. 1985) (city ordinance precluding signs displaying obscene, indecent or immoral material was unconstitutionally vague where those terms were not defined in any way); *Covenant Media of Illinois, LLC v. City of Des Plaines, Illinois*, 391 F. Supp. 2d 682, 692 (N.D. Ill. 2005)  (sign ordinance prohibiting display of obscene, indecent or immoral material unconstitutionally vague where ordinance did not specify criteria to be used in enforcing ordinance); *Outdoor Systems, Inc. v. City of Merriam, Kansas*, 67 F. Supp. 2d 1258, 1272-73 (D. Kan. 1999) (sign ordinance prohibiting display of obscene, indecent or immoral material unconstitutionally vague absent definitions; ordinance did not set forth explicit standards to provide fair warning of the types of signs which were prohibited; at a minimum, ordinance prohibiting "obscene" signs would have to expressly incorporate the standards of *Miller v. California*); *but see Nichols Media Group, LLC v. Town of Babylon*, 365 F. Supp. 2d 295, 312 (E.D.N.Y. 2005) (ordinance's use of the word "obscene" without defining term not vague; ordinance inherently contains within it a reference to conduct that has been specifically defined by the Supreme Court in *Miller v. California*).

For the foregoing reasons, the court concludes that new section 19.48.015 L.2(b) is unconstitutionally vague.


C.      *Durational Limits*

Plaintiff also challenges new section 19.48.015 L.2(i), which provides that an informational sign may be posted "for a period of up to ninety (90) days, at which time the sign shall be removed or replaced except that those signs tied to an election shall be removed immediately after the date of the election." Plaintiff asserts that both the 90-day "remove or replace" provision and the durational limitation on election signs are content-based. The court begins with an examination of the 90-day "remove or replace" provision. Informational signs, except those "tied to an election," must be removed or replaced after 90 days. Other signs permitted by the ordinance to be displayed for 90 days or longer are not subjected to the remove-or-replace requirement. A "for sale" sign on a residential property may be displayed for as long as the property remains for sale–infinitely longer than 90 days if the property owner is willing and no buyers are forthcoming. The City's ordinance does not require that a "for sale" sign be replaced after any length of time and, significantly, the ordinance does not mandate any particular material or construction for a residential "for sale" sign. Thus, a property owner could construct a wire-hinged cardboard placard to advertise the sale of his or her home and this same sign could remain displayed for many months or even years. In such circumstances, the court agrees with plaintiff that the 90-day "remove or replace" provision of new section 19.48.015 L.2(i) is content-based because it requires the City's codes inspector to examine the content of the message displayed (*e.g.*, is it a "for sale" sign or an informational sign other than one "tied to an election"?) before determining whether the provision applies.

According to the City, the remove-or-replace provision is content-neutral because the City adopted the provision for a purpose (aesthetics) unrelated to the content of the message. Relying

on *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), the City urges that its stated purpose is entitled to controlling consideration and that a regulation is deemed content-neutral so long as it is not adopted because of disagreement with the message conveyed.  As the Supreme Court clarified in *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), however, a content-neutral justification offered by a government is not given controlling weight without further inquiry.  *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1406 (8th Cir. 1995).  Rather, the court must examine whether the regulation accomplishes the stated purpose in a content-neutral manner.  *Id.*  As the Court explained in *City of Cincinnati*:

> We agree with the city that its desire to limit the total number of newsracks is "justified" by its interests in safety and esthetics.  The city has not, however, limited the number of newsracks; it has limited (to zero) the number of newsracks *distributing commercial publications*.  As we have explained, there is no justification for that particular regulation other than the city's naked assertion that commercial speech has "low value."  It is the absence of a neutral justification for its selective ban on newsracks that prevents the city from defending its newsrack policy as content neutral.

507 U.S. at 429-30 (emphasis in original).  Here, the City's requirement that informational signs (other than those tied to an election) be removed or replaced after 90 days is justified by its interest in protecting the "aesthetic welfare" of its neighborhoods; it seeks to avoid having unstable signs in disrepair cluttering the neighborhood.  The City's sign ordinance, however, does not accomplish the stated purpose in a content-neutral manner.  The City has not required the removal or replacement of all temporary signs generally; it has required the removal or replacement of informational signs (and only those not tied to an election, which cannot be replaced) in particular.  As explained above, a "for sale" sign constructed of cardboard (or any

17

other nondurable material) may remain displayed indefinitely without the need for replacement regardless of whether that sign is in disrepair.  Like Cincinnati, then, the City "differentiates between speakers for reasons unrelated to the legitimate interests that prompted the regulation." *See Whitton*, 54 F.3d at 1407.  Stated another way, the City has articulated no basis for distinguishing between informational signs and other temporary signs that is relevant to an interest asserted by the City.  *See City of Cincinnati*, 507 U.S. at 428.  Thus, the remove-or-replace provision is content-based and subject to strict scrutiny.

Relying on *Whitton*, the City contends that the remove-or-replace provision passes strict scrutiny.  According to the City, the Eighth Circuit in *Whitton* expressly held that a "remove or replace" provision with respect to temporary signs passes constitutional scrutiny.  *Whitton*, however, did not address the constitutionality of a remove-or-replace provision and, indeed, the challenged ordinance did not contain a remove-or-replace provision.  The Circuit, then, did not purport to analyze whether such a provision would be constitutionally sound.  Rather, the Eighth Circuit, in a footnote, merely suggested that the City's stated interests (traffic safety and aesthetics) in placing durational limits on political signs could be achieved through less restrictive means such as a requirement mandating that signs be removed or replaced, an example which the plaintiff in *Whitton* conceded would be constitutional.  *See Whitton*, 54 F.3d at 1409 n.13.  At the most, then, *Whitton* supports an argument that a remove-or-replace provision like that utilized by the City is the least restrictive means of achieving an interest that is compelling.

While the City's interest in aesthetics may be substantial, it is not compelling in the

18

context of this case as evidenced by the City's failure to apply the remove-or-replace requirement to all temporary signs. *See Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1233-34 (11th Cir. 2006) (in context of sign ordinance, city's interest in aesthetics substantial but not compelling) (citing cases); *Whitton*, 54 F.3d at 1408 (municipality's asserted interest and aesthetics, while significant, has never been held to be compelling); *Rappa v. New Castle County*, 18 F.3d 1043, 1082 (3rd Cir. 1994) (the allowance of some signs, but not others, is evidence that the government's asserted interest in aesthetics is not sufficiently compelling to justify disparate treatment between classes of speech). Thus, whether the remove-or-replace provision is the least restrictive means for achieving the asserted interest is an issue that the court never reaches. In sum, because the remove-or-replace provision is a content-based restriction that fails strict scrutiny, plaintiff has demonstrated a substantial likelihood of success on the merits on his First Amendment claim with respect to this provision.

The court turns, then, to address that portion of the ordinance mandating the removal of election-related signs "immediately" after the election. Nearly every court that has addressed the constitutionality of sign ordinances requiring the immediate removal after an election of election-related signs has held that such requirements are content-based unless the same requirements apply to all temporary signs. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1264-65 (11th Cir. 2005) (sign ordinance requiring removal of election-related signs two days after election was content-based where other signs could remain indefinitely); *Whitton v. City of Gladstone*, 54 F.3d 1400, 1403-05 (8th Cir. 1995) (sign ordinance requiring removal of election-related signs seven days after election was content-based where other signs had to be

removed within 10 days or 30 days of the event and still other signs could remain indefinitely); *McFadden v. City of Bridgeport*, 422 F. Supp. 2d 659, 673-74 (N.D. W. Va. 2006) (same);*Bella Vista United v. City of Philadelphia*, 2004 WL 825311, at *5-6 (E.D. Pa. Apr. 15, 2004) (same); *Outdoor Systems, Inc. v. City of Lenexa, Kansas*, 67 F. Supp. 2d 1231, 1239-40 (D. Kan. 1999) (same); *Curry v. Prince George's County, Maryland*, 33 F. Supp. 2d 447, 454-55 (D. Md. 1999) (same); *but see Sugarman v. Village of Chester*, 192 F. Supp. 2d 282 (S.D.N.Y. 2002) (ordinance requiring removal of election signs within 20 days of election deemed content-neutral where all temporary signs were subjected to durational limit of 14 days; election signs treated more favorably).

Like the ordinances in the cases set forth above, the City's ordinance here is content-based because "determining whether a sign may stay up or must come down requires consideration of the message it carries." *Outdoor Systems*, 67 F. Supp. 2d at 1240 (quoting and citing cases). An "informational" sign other than an election-related sign may stay up for as long as 90 days and then may be replaced with an identical sign. The practical effect of this "remove or replace" provision is that, unlike election-related signs, informational signs may remain on display year-round. *See Outdoor Systems*, 67 F. Supp. 2d at 1240 (ordinance requiring political campaign signs to be removed within 7 days after election was content-based restriction where other political signs were not subject to a durational limitation).[10] A "for sale" sign on a

---

[10]At oral argument, the City urged that the ordinance does not preclude a property owner from replacing an election-related sign immediately upon removal of the initial sign. The City's argument, however, flatly contradicts the plain language of new section 19.48.015 L.2(i), which expressly states that election-related signs "shall be removed immediately after

residential property may stay up for an indefinite period of time depending on the length of time the property is offered for sale; if the property does not sell readily, the sign may stay up for several months, one year, two years or as long as the property owner may be willing to endeavor to sell his or her property.  Once the property sells, the ordinance does not require removal of the sign "immediately" upon the sale; it requires removal within 7 days after the execution of the contract.  *See Whitton*, 54 F.3d at 1404-05 (requiring removal of election signs within 7 days of election was content-based restriction where construction signs did not need to be removed until 10 days after completion of project).  A church in a residential zone could choose to erect a temporary sign announcing a particular event just one day prior to the event and then could keep the sign on display for another 19 days after the completion of the event.

Having concluded that the durational limitation placed on election-related signs is content-based, the court subjects that limitation to strict scrutiny, *see Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1283 (10th Cir. 2002), and concludes that the durational limitation fails to satisfy that scrutiny.  Significantly, the City's only articulated interest for imposing the durational limitation on election-related signs is aesthetics which, as explained above, is simply not a compelling interest.  Moreover, even assuming that interest were compelling, the ordinance is not the least restrictive means to achieve that interest.  To the extent the City is concerned about deteriorating signs creating an aesthetic eyesore, the City could enact other provisions mandating the removal of any sign in a state of disrepair.  *See, e.g., McFadden*,

---

the date of the election."  This provision contrasts with the provision concerning other informational signs, which must be "removed or replaced" after 90 days.

422 F. Supp. 2d at 674-75 (durational limit on election signs not the least restrictive means to achieve interest in aesthetics where City already had content-neutral avenue to facilitate removal of signs in disrepair).

For the foregoing reasons, new section 19.48.015 L.2(i) is an impermissible content-based regulation of speech and plaintiff has demonstrated a substantial likelihood of success on the merits of his claim that this section violates the First Amendment of the Constitution.[11]

D.    *Stability Requirement*

Finally, plaintiff challenges new section 19.48.015 L.2(f), which requires that all informational signs "be designed to be stable under all weather conditions, including high winds." While the parties have focused very little on this particular provision, the court's analysis of the durational limitations set forth in 19.48.015 L.2(i) mandates the conclusion that the stability requirement is similarly content-based and fails to satisfy strict scrutiny. As explained above, the ordinance does not mandate the use of any particular material or

---

[11]While plaintiff does not challenge the phrase "signs tied to an election" as unconstitutionally vague, the court expressed concern at oral argument that in some circumstances (e.g., a sign concerning a political "hot button" issue such as "Bring Home the Troops"; "Ban Abortion"; or "End the War in Iraq") it might be difficult to ascertain whether a particular sign was "tied to an election." Indeed, even the City conceded that the court had raised a "good point." While the court declines to resolve whether the phrase is unconstitutionally vague, if the City chooses to rewrite this provision, it is encouraged to consider an alternative phrase. *See Curry*, 33 F. Supp. 2d at 450-51 (declining to consider whether phrase "campaign sign" was unconstitutionally vague as ordinance violated First Amendment in any event; encouraging City upon rewriting ordinance to consider whether phrase was intended to include "cause" signs in addition to "political" signs).

construction for other temporary signs.  A residential "for sale" sign or a temporary sign displayed by a church could consist of a wire-hinged cardboard placard or even construction paper; the City does not require such signs to withstand high winds or other weather conditions. Thus, while the City understandably seeks to avoid having dilapidated signs blowing about its neighborhoods, the City's ordinance does not accomplish this goal in a content-neutral manner. Finally, as explained above, the City has not shown that its stated interest in aesthetics is compelling because it has not applied the stability requirement to all temporary signs.  Plaintiff, then, has demonstrated a substantial likelihood of success on the merits of this First Amendment claim.

## IV.    Severability

Having concluded that each of the provisions of new section 19.48.015 L challenged by plaintiff are unconstitutional,[12] the court must decide whether those provisions can be severed from the rest of the ordinance.  The severability of a local ordinance is a question of state law. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988).  The Kansas

---

[12]While the court has concluded that several aspects of the City's sign ordinance as it relates to informational signs in residential districts are unconstitutional, the court declines to suggest to the City how the ordinance might be modified to correct those deficiencies.  As a matter of judicial philosophy, the court deems it proper to resolve plaintiff's motion on the narrow grounds set forth by the parties and improper to venture beyond those limited issues. Moreover, the briefing and argument set forth by the parties revealed that numerous potential issues existed through which the parties had not thoroughly thought and had not rigorously analyzed.  For this reason, too, the court declines to expand this opinion beyond the contours of the motion itself.

Supreme Court has stated the test as follows:

> Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional [sic] portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent.

*Thompson v. K.F.B. Ins. Co.*, 252 Kan. 1010, 1023 (1993) (quoting *Felten Truck Line, Inc. v. State Bd. of Tax Appeals*, 183 Kan. 287, 300 (1958)); *accord Williams Nat. Gas Co. v. Supra Energy, Inc*., 261 Kan. 624, 629 (1997) ("It is generally recognized that, where unconstitutional parts of a statute can be readily separated from the remainder of the statute without affecting the meaning of what remains, the unconstitutional language will be stricken and the constitutional portion will stand.").

While neither party addressed the severability issue in their papers, both parties at oral argument agreed that the provision prohibiting signs displaying "obscene, profane or indecent" material and the provision requiring the removal of signs "tied to an election" immediately after the election could be severed easily from the remainder of the ordinance. The city also expressed a preference for the severability of any voided provisions. After reviewing the suspect provisions as well as the ordinance as a whole, the court concludes that the four provisions challenged by plaintiff may be severed from the remainder of the ordinance. The provisions are discrete and the stated purposes of the City's sign ordinance, such as reducing traffic hazards, reducing visual clutter and protecting property values, can be accomplished in large part even

24

in the absence of the four challenged provisions.  *See Action Outdoor Advertising JV, LLC v. City of Destin, Florida*, 2005 WL 2338804, at *11 (N.D. Fla. Sept. 23, 2005).  In other words, even without these four provisions, the ordinance remains a comprehensive and coherent system of sign regulation."  *Id.*  Finally, there is no basis to believe that the city council would have preferred having no sign ordinance at all to one that contains all the current provisions other than the four isolated provisions discussed above.  *See id.*; *accord Cafe Erotica of Florida, Inc. v. St. Johns County*, 360 F.3d 1274, 1292 (11th Cir. 2004) (provision separately regulating "political message signs" easily severable); *Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, Florida*, 348 F.3d 1278, 1280 & nn.1-2 (11th Cir. 2003) (affirming district court's severance of sign ordinance provision placing size restrictions on free speech signs); *Outdoor Systems, Inc. v. City of Lenexa, Kansas*, 67 F. Supp. 2d 1231, 1241-42 (D. Kan. 1999) (durational limit applicable to campaign signs was severable from remainder of ordinance).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for a preliminary injunction (doc. 3) is **granted**.  The City is enjoined from enforcing in residential districts subparagraphs 2(a), 2(b), 2(f) and 2(i) of new section 19.48.015 L during the pendency of this suit.  Furthermore, since it appears at this time that the city will suffer no loss or damage by reason of the issuance of this preliminary injunction, no bond or other security is required of plaintiff.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties, within 14 days of

the date of this order, shall contact the chambers of Magistrate Judge Waxse to schedule a status

conference.

**IT IS SO ORDERED.**

Dated this 31st day of August, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge